IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

ANDREW RICK LOPEZ,

      Plaintiff,                        No. CIV S-09-1760 MCE GGH P

     vs.

ARNOLD SCHWARZENEGGER, et al.,

      Defendants.                FINDINGS AND RECOMMENDATIONS

_____/

        Plaintiff is a state prisoner proceeding pro se and in forma pauperis with an action filed pursuant to 42 U.S.C. § 1983. By a concurrently filed order, the court has found a number of defendants appropriate for service. However, as to plaintiff's remaining defendants and claims, the court will recommend dismissal for the reasons set forth below.

        As plaintiff was previously informed, the court is required to screen complaints brought by prisoners seeking relief against a governmental entity or officer or employee of a governmental entity. 28 U.S.C. § 1915A(a). The court must dismiss a complaint or portion thereof if the prisoner has raised claims that are legally "frivolous or malicious," that fail to state a claim upon which relief may be granted, or that seek monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915A(b)(1),(2).

        A claim is legally frivolous when it lacks an arguable basis either in law or in fact.

1

Neitzke v. Williams, 490 U.S. 319, 325 (1989); Franklin v. Murphy, 745 F.2d 1221, 1227-28 (9th Cir. 1984). The court may, therefore, dismiss a claim as frivolous where it is based on an indisputably meritless legal theory or where the factual contentions are clearly baseless. Neitzke, 490 U.S. at 327. The critical inquiry is whether a constitutional claim, however inartfully pleaded, has an arguable legal and factual basis. See Jackson v. Arizona, 885 F.2d 639, 640 (9th Cir. 1989); Franklin, 745 F.2d at 1227.

A complaint must contain more than a "formulaic recitation of the elements of a cause of action;" it must contain factual allegations sufficient to "raise a right to relief above the speculative level." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 127 S. Ct. 1955, 1965 (2007). "The pleading must contain something more...than...a statement of facts that merely creates a suspicion [of] a legally cognizable right of action." Id., quoting 5 C. Wright & A. Miller, Federal Practice and Procedure 1216, pp. 235-235 (3d ed. 2004). "[A] complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, No. 07-1015, 2009 WL 1361536 at * 12 (May 18, 2009) (quoting Twombly, 550 U.S. at 570, 127 S.Ct. 1955). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id.

In reviewing a complaint under this standard, the court must accept as true the allegations of the complaint in question, Hospital Bldg. Co. v. Rex Hospital Trustees, 425 U.S. 738, 740, 96 S.Ct. 1848 (1976), construe the pleading in the light most favorable to the plaintiff, and resolve all doubts in the plaintiff's favor. Jenkins v. McKeithen, 395 U.S. 411, 421, 89 S.Ct. 1843 (1969).

Although the court in the original screening order set forth in detail the defects to be remedied in any amended complaint, plaintiff does not appear, despite the significant passage of time he has had to do so, to have adequately heeded it with respect to a number of the named defendants and his claims. In the original complaint, plaintiff had named nearly 30 defendants; it

is not even clear in the amended complaint how many defendants he seeks to name. Within the case caption, plaintiff names 24 defendants. Amended Complaint (AC), p. 1. In the portion of the form complaint under the heading of "Defendants," plaintiff lists 23 individuals. Id. at 2-3. Within the body of the 40-page amended complaint wherein he sets forth names and responsibilities of the defendants (on information and belief), he sets forth 18 defendants, but then adds a 19th (Cronjeager), without alleging what his/her responsibilities are. AC, pp. 5-10. Nevertheless, the court by careful review of the amended complaint has found some fifteen defendants appropriate for service (with one, Matthew Cate, only appropriate in an official capacity).

Plaintiff begins inauspiciously by launching into his sweeping allegations that the California Department of Corrections and Rehabilitation (CDCR) ignores its obligations as set forth in CAL. CODE REGS. tit.xv, permitting policies, practices and procedures that permit "employee prison gangs to expand and climb the ranks within the CDCR...allowing the code-of-silence and unlawful activities of employee gangs to continue unabated." AC, p. 12. Plaintiff alleges that CDCR policies and practices result in false, unreliable confidential information being documented and placed in inmate files. Id. CDCR and the defendant Governor's "failures to remove employee gangs and stamp out the code-of-silence" results in a policy or practice of deliberate indifference to the rights of inmates, according to plaintiff. Id. at 13. A February 10, 1995, memorandum written by then-Deputy Director of the CDCR institutions division, David Tristan, regarding a warden's meeting agenda acknowledges the CDCR code-of-silence custom, policy or practice signified dishonesty in reporting or failing to report prisoner rights' violations, including due process rights and the right to free speech with regard to disciplinary and validation issues. Id.

Plaintiff finally begins to relate the alleged policies, albeit in a generic manner, to himself, asserting that the aforementioned policies and practices have resulted in his having been denied due process with regard to disciplinary charges and gang validation and inactive status.

AC, p. 13. He also claims that he has been subjected to false and retaliatory disciplinary charges and guilty findings, that he has been denied parole and subjected to the SHU (security housing unit), denied law library access and suffered retaliation for the filing of grievances and court actions and that both CDCR and the BPH (Board of Parole Hearings) have intentionally placed and maintained inaccurate records in plaintiff's files and have refused plaintiff's requests to remove them, which has resulted, and will continue to result, in determinations that are adverse to him. Id.

Plaintiff then, in even greater detail than he did in his original complaint, goes on to recount what appears to be his incarceration history, referencing his having been incarcerated at DVI,[1] from June 1992 until October 1994. AC, p. 14. In an apparent non sequitur, although he does not name (former CDCR Director) Alameida as a defendant, plaintiff then claims that in 2008, Alameida escaped "due to his health" federal obstruction of justice charges related to his CDCR employment. Id. Without specifying when, what case he is referencing, who was named and what was at issue, plaintiff states that 30 days after he filed a § 1983 action against a CDCR employee,[2] unnamed CDCR employees issued disciplinary charges against him, alleged confidential information against him and placed him in segregation. AC, pp. 14, 28. Plaintiff conclusorily contends that Alameida approved these actions. Id. at 14.

Plaintiff alleges that when he was subsequently incarcerated at CSP-Sac (California State Prison-Sacramento) from October, 1994 through January of 1997, at which point he was transferred to High Desert State Prison (HDSP), the § 1983 action that he filed at

---

[1] Deuel Vocational Institution.

[2] In his amended complaint, plaintiff did list separately the following case as prior litigation: Lopez v. Hada, CIV-S-94-0891 FCD JFM P. The court takes judicial notice of that case. (Judicial notice may be taken of court records. Valerio v. Boise Cascade Corp., 80 F.R.D. 626, 635 n.1 (N.D. Cal. 1978), aff'd, 645 F.2d 699 (9th Cir.), cert. denied, 454 U.S. 1126 (1981)). That case ended in 1999 in a jury verdict for defendants, Judge Damrell ordered that the subsequent appeal was not taken in good faith and the appeal was dismissed in 2000 for failure to prosecute (failure to pay the fees).

4

DVI was pending and his ability to litigate his unidentified case was obstructed due to prison lockdowns, loss of property by employees and an inability to maintain legal assistance. AC, p. 14. At this point, the court notes that plaintiff has failed to link any of these allegations to any named defendants, and it appears grandiose on its face, that he appears to be at least implying that institutional lockdowns, for example, were imposed at CSP-Sac for the purpose of hindering his § 1983 case filed at DVI. Moreover, property losses and difficulties in obtaining legal assistance appear to be common occurrences in prison and do not, of themselves, implicate a CDCR policy or practice.

Plaintiff continues with his historical litany, alleging that after his arrival at HDSP in Jan., 1997, prison employees (unnamed again) "'misplaced' a large amount" of plaintiff's legal property, which was ultimately forwarded to him in August 2002, after he missed an AEDPA deadline, even though an (unidentified) prison employee had submitted a declaration in 1997 to the federal court that plaintiff had received all of his property. AC, p. 14. Plaintiff then references a § 1983 complaint he says that he filed in August, 1998, primarily involving HDSP employees, still pending. Id. Again, plaintiff fails to identify the case at this point.[3] Plaintiff alleges that following the filing of the action in 1998, HDSP employees "including CDCR employee gang affiliates, increased acts of retaliation" against him. Id. Again, plaintiff links no named defendants to this generic allegation. Plaintiff asserts he filed a grievance against a P. Haas, an individual not named as a defendant in this action. Id. Plaintiff then claims that he was denied a transfer from HDSP although he was eligible and had not been found guilty of a disciplinary charge since 1996. Id. Then, after unnamed HDSP employees told an inmate that they were going "to 'make an example'" of plaintiff for being a "'legal begal [sic],'" Plaintiff was placed in Ad Seg without due process and ten months later he was validated as a prison gang

---

[3] Plaintiff indicates that he has identified it elsewhere in the amended complaint, but the undersigned is unable to locate it. However, court records indicate that plaintiff did file a § 1983 action in October (not August) of 1998, which is, indeed, still pending, Lopez v. Peterson, CIV-S-98-2111 LKK EFB P.

member. Id. Upon being assessed a SHU term for the gang validation, an unnamed CDCR captain told plaintiff "to 'file on that, you'll never get out now.'" Id. Once more, plaintiff does not name any individual as a defendant in the present action.

Plaintiff moves on to his February, 2001 transfer to Corcoran State Prison, where he was housed in the SHU due to the gang validation. AC, p. 14. Plaintiff states that he filed another § 1983 action alleging retaliation, complaining of his segregated housing and the [gang] validation then goes on to allege that he is subjected to "continuing" due process violations and to retaliation at Corcoran. Id. at 14-15. [4] Plaintiff then retraces to his original gang validation on November 15, 2000, which was predicated on some six items (two alleged informant statements and two CDC 128 B forms based on alleged staff documentation); an additional four CDC 128 B forms were rejected as evidence of his prison gang membership. Id. at 15. Only at this point does plaintiff begin to set forth the allegations that are germane to this action and for which, by separate order, the court has found that plaintiff has framed colorable claims, i.e., those claims related to his continued housing in the SHU or Ad Seg due to his continued validation as a prison gang member from 2003 on predicated on allegedly inadequate and/or fraudulent supporting evidence.

However, plaintiff's generic allegations that the CDCR policies and procedures of defendants Schwarzenegger, Woodford, Cate, Adams and Lopez have deprived him of due process and his liberty interest in parole do not frame a colorable claim. AC, pp. 18, 20-21. Plaintiff fails to link these officials sufficiently to his claims of gang validation SHU placement despite the lack of documentation of gang activity in his files and his allegation that the validation and placement will continue to impact him negatively as long as the placement is retained in his files. With regard to any claims related to law library access and a disciplinary action unrelated to the gravemen of this complaint (see below), these defendants should also be

---

[4] The court cannot locate the identification of this case where plaintiff says that it is.

1  dismissed. Id. at 25-28.

2        As plaintiff was previously cautioned, the Civil Rights Act under which this
3  action was filed provides as follows:

> Every person who, under color of [state law] . . . subjects, or causes
> to be subjected, any citizen of the United States . . . to the
> deprivation of any rights, privileges, or immunities secured by the
> Constitution . . . shall be liable to the party injured in an action at
> law, suit in equity, or other proper proceeding for redress.

42 U.S.C. § 1983. The statute requires that there be an actual connection or link between the actions of the defendants and the deprivation alleged to have been suffered by plaintiff. See Monell v. Department of Social Servs., 436 U.S. 658 (1978); Rizzo v. Goode, 423 U.S. 362 (1976). "A person 'subjects' another to the deprivation of a constitutional right, within the meaning of § 1983, if he does an affirmative act, participates in another's affirmative acts or omits to perform an act which he is legally required to do that causes the deprivation of which complaint is made." Johnson v. Duffy, 588 F.2d 740, 743 (9th Cir. 1978).

      Moreover, supervisory personnel are generally not liable under § 1983 for the actions of their employees under a theory of respondeat superior and, therefore, when a named defendant holds a supervisorial position, the causal link between him and the claimed constitutional violation must be specifically alleged. See Fayle v. Stapley, 607 F.2d 858, 862 (9th Cir. 1979); Mosher v. Saalfeld, 589 F.2d 438, 441 (9th Cir. 1978), cert. denied, 442 U.S. 941 (1979). Vague and conclusory allegations concerning the involvement of official personnel in civil rights violations are not sufficient. See Ivey v. Board of Regents, 673 F.2d 266, 268 (9th Cir. 1982). Defendants Schwarzenegger, Woodford, Cate, Adams, Lopez should each be dismissed to the extent they are sued in an individual capacity for money damages.

      Plaintiff was also told that just as it is not necessary to allege Monell[5] policy grounds when suing a state or municipal official in his or her official capacity for injunctive relief

---

[5] Monell v. Department of Social Servs., 436 U.S. 658, 98 S. Ct. 2018 (1978).

related to a procedure of a state entity, Chaloux v. Killeen, 886 F.2d 247 (9th Cir. 1989), it follows that it is not necessary to allege the personal involvement of a state official when plaintiffs are attacking a state procedure on federal grounds that relates in some way to the job duties of the named defendant. All that is required is that the complaint name an official who could appropriately respond to a court order on injunctive relief should one ever be issued. Harrington v. Grayson, 764 F. Supp. 464, 475-477 (E.D. Mich. 1991); Malik v. Tanner, 697 F. Supp. 1294, 1304 (S.D.N.Y. 1988). ("Furthermore, a claim for injunctive relief, as opposed to monetary relief, may be made on a theory of respondeat superior in a § 1983 action."); Fox Valley Reproductive Health Care v. Arft, 454 F. Supp. 784, 786 (E.D. Wis. 1978). See also, Hoptowit v. Spellman, 753 F.2d 779 (9th Cir. 1985), permitting an injunctive relief suit to continue against an official's successors despite objection that the successors had not personally engaged in the same practice that had led to the suit. However, because a suit against an official in his or her official capacity is a suit against the state, a practice, policy or procedure of the state must be at issue in a claim for official capacity injunctive relief. Haber v. Melo, 502 U.S. 21, 25, 112 S. Ct. 358, 361-62 (1991).

To the extent that plaintiff's allegations might implicate state policies or procedures and for any potential injunctive relief that could be ordered in the future, CDCR Secretary Cate, is quite sufficient as an official capacity defendant. Therefore, defendants Schwarzenegger, Woodford, Adams, Lopez should be also dismissed from this action each in his official capacity.

As to defendants Yamat and Anderson, plaintiff claims they shut down the law library without appropriate approval on April 20, 2005, and when plaintiff filed a grievance about the closure, retaliated by bringing a false disciplinary charge against him. AC, pp. 25-26. Defendant Keener denied plaintiff due process at the hearing on the disciplinary charge and assessed plaintiff a 90-day loss of library access. Id. at 26. Defendant Brooks ignored the due process violations and supported the "fraud," when plaintiff filed a grievance about the lack of

due process he claims to have suffered. Id. at 27. Defendant Rosenthal placed a counseling chrono in plaintiff's files, on April 6, 2006, falsely alleging plaintiff's abuse of his law library privileges. Id. at 28.

Fed. R. Civ. P. 18(a) provides: "A party asserting a claim, counter-claim, crossclaim, or third-party claim may join, as independent or alternative claims, as many claims as it has against an opposing party." "Thus multiple claims against a single party are fine, but Claim A against Defendant 1 should not be joined with unrelated Claim B against Defendant 2." George v. Smith, 507 F.3d 605, 607 (7th Cir. 2007). "Unrelated claims against different defendants belong in different suits[.]" Id.

It is true that Fed. R. Civ. P. 20(a) provides that "[p]ersons ...may be joined in one action as defendants if: (A) any right is asserted against them jointly, severally, or in the alternative with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences; and (B) any question of law or fact common to all defendants will arise in the action." However, "[a] buckshot complaint that would be rejected if filed by a free person – say, a suit complaining that A defrauded the plaintiff, B defamed him, C punched him, D failed to pay a debt, and E infringed his copyright, all in different transactions – should be rejected if filed by a prisoner." Id. at 607.

Plaintiff may not use the instant complaint as a vehicle to heap claim after unrelated claim against different defendants. The claims related to his law library access or lack thereof and a subsequent allegedly retaliatory prison disciplinary action cannot be linked to his claims regarding his SHU placement arising from a lack of evidence support his continued gang validation simply because he conclusorily claims that he has been subjected to a wide-ranging and insidious purported code-of-silence among prison staff. If plaintiff believes he has colorable claims against the defendants related to his law library access allegations, he may seek to proceed in a separate action.

"The district court's discretion to deny leave to amend is particularly broad where

1 | plaintiff has previously amended the complaint." Metzler Inv. GMBH v. Corinthian Colleges,
2 | Inc. 540 F.3d 1049, 1072 (9th Cir. 2008), quoting In re Read-Rite Corp., 335 F.3d 843, 845 (9th
3 | Cir. 2003). All defendants not identified in the concurrently filed order as appropriate for service
4 | related to his extended SHU placement/gang validation claims should be dismissed from this
5 | action, including Yamat, Anderson, Keener, Brooks, Rosenthal.

6 | Accordingly, IT IS HEREBY RECOMMENDED that this action proceed on the
7 | amended complaint only as to those defendants named in the separately filed screening order and
8 | that defendants Schwarzenegger, Woodford, Adams, Lopez, Yamat, Anderson, Keener, Brooks,
9 | Rosenthal be dismissed from this action, and that defendant Cate be dismissed in his individual
10 | capacity.

11 | These findings and recommendations are submitted to the United States District
12 | Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l). Within fourteen
13 | days after being served with these findings and recommendations, plaintiff may file written
14 | objections with the court. Such a document should be captioned "Objections to Magistrate
15 | Judge's Findings and Recommendations." Plaintiff is advised that failure to file objections
16 | within the specified time may waive the right to appeal the District Court's order. Martinez v.
17 | Ylst, 951 F.2d 1153 (9th Cir. 1991).

18 | DATED: October 4, 2010            /s/ Gregory G. Hollows

19 |                                   UNITED STATES MAGISTRATE JUDGE

GGH:009
20 | lope1760.fr