IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

ANDREW RICK LOPEZ,

Plaintiff, No. CIV S-09-1760 MCE GGH P

vs.

ARNOLD SCHWARZENEGGER, et al., ORDER and

Defendants. FINDINGS AND RECOMMENDATIONS

_______________________________/

Plaintiff, a state prisoner proceeding pro se, seeks relief pursuant to 42 U.S.C. § 1983. Pending before the court are: 1) a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6), filed by defendants Cate, Garcia, Berna, Cronjagar,[1] Gomez and Florez, on February 22, 2011, to which plaintiff filed his opposition on March 3, 2011, to which these defendants filed a reply on March 8, 2011; 2) plaintiff's "motion for default judgment," filed on February 25, 2011, to which defendants filed an opposition on March 15, 2011, after which plaintiff filed his reply on March 24, 2011; 3) a motion to dismiss pursuant to Fed. R. Civ. 12(b)(6), filed on February 28, 2011, by defendant Park, to which plaintiff filed his opposition on March 11, 2011, after which defendant Park filed a reply on March 18, 2011; 4) a motion to dismiss, pursuant to Rule 12(b)(6), brought

[1] This defendant's name was evidently misspelled by plaintiff as "Cronjeagar."

by defendants McClure, Ruff, Williams, Burt, Fischer and Buechner, filed on March 28, 2011, to which plaintiff filed his opposition on April 13, 2011, after which these defendants filed their reply on April 15, 2011; and 5) plaintiff's motion for extension of time to provide contact information on unserved defendants, Kissel and Roman, filed on May 11, 2011, which is denied as moot at this time, these defendants having been subsequently re-served.

Motion for Default Judgment

Plaintiff moves the court to enter a judgment of default by the defendants for their failure to serve an answer or take timely action. Motion for Default, pp. 1-4. The court takes judicial notice of the case docket.[2] Prior to the filing of plaintiff's motion, executed waivers of service had been timely filed by defendants Garcia, Berna, Florez and Cate. See docket # 36. Executed waivers of service were timely filed by defendants Gomez and Cronj[]agar at docket # 39. These defendants, Cate, Garcia, Berna, Cronjagar, Gomez and Florez filed their motion to dismiss timely, on February 22, 2011, in accordance with the signed waivers. An executed waiver of service was returned signed at docket # 44 on behalf of defendant Park, whose motion to dismiss was filed simultaneously, on February 28, 2011. Executed waivers of service appear to have been timely filed for defendants Williams, Burt, McClure, Buechner, Ruff, Fischer. Docket # 57 & # 58. These defendants, McClure, Ruff, Williams, Burt, Fischer and Buechner, filed their motion to dismiss timely from the time at which they were served in accordance with the waivers. Prior to the filing of plaintiff's default motion, waivers for defendants Kissel and Roman had been returned unexecuted (docket # 37). Following an order for plaintiff to provide additional information, plaintiff's subsequent request for judicial intervention to obtain more information as to these defendants was granted; service upon these defendants has been re-ordered as of May 20, 2011. Docket # 72. In addition to alleging that defendants were in default,

---

[2] A court may take judicial notice of court records. See Barron v. Reich, 13 F.3d 1370, 1377 (9th Cir. 1994); MGIC Indem. Co. v. Weisman, 803 F.2d 500, 505 (9th Cir. 1986); United States v. Wilson, 631 F.2d 118, 119 (9th Cir. 1980).

plaintiff also takes issue with the fact, in his reply, that the motions to dismiss only challenge some of his claims and seeks an entry of default as to the unchallenged or unanswered claims. Reply, pp. 4-5. Defendants have brought their motions pursuant to Fed. R. Civ. P. 12(b)(6), failure to state a claim upon which relief can be granted. Such a motion must be brought prior to filing a responsive pleading, i.e., answer. See Fed. R. Civ. P. 12(b). By not challenging every claim within the amended complaint, defendants are not thereby in default. Plaintiff's motion will be denied.

Plaintiff's Allegations

This case proceeds on a first amended complaint against some fifteen defendants (two of whom are as yet unserved[3]), as modified by the Order, filed on October 28, 2010, dismissing nine defendants and, in addition, dismissing defendant Matthew Cate in an individual capacity.[4] The gravamen of this action is plaintiff's allegation regarding extended housing in the SHU (special/security housing unit) or Ad Seg (administrative segregation) arising from his continued validation as a prison gang member from 2003 on, predicated on allegedly inadequate and/or fraudulent supporting evidence. First Amended Complaint (FAC), pp. 15-25. Plaintiff claims the gang validation SHU placement despite the lack of documentation of gang activity in his files will continue to impact him negatively with regard to parole consideration and classification score and levels as long as the placement is retained in his files. Id., at 25.

Plaintiff alleges that his gang validation in November 2000, relied on six items: four alleged informant statements and two CDC 128 B forms based on alleged staff documentation. FAC, p. 15. The Nov. 15, 2000 128 B-2 form/report rejected four additional CDC-128 B forms as not meeting the gang validation criteria. Id. Thereafter, one of the two

---

[3] The latest order directing service upon defendants Kissel and Roman was filed on May 20, 2011.

[4] Thus as to defendant Cate, this action proceeds against him only in an official capacity.

CDC 128 B reports found reliable in November of 2000, was stamped as also failing to meet the requisite criteria. Id. In 2003 and 2004, without notice to plaintiff, the same ten items originally submitted in 2000 were re-evaluated and plaintiff was validated as a prison gang member. Id. Defendant Roman was involved in the 2003 gang validation, Id. Plaintiff was unaware of the re-evaluations until late 2004, when non-party R. Comfort issued a CDC 128 G form refusing to approve plaintiff's SHU term based on unreliable validation documentation; he deferred the validation but approved a 60-day Ad Seg placement extension for case follow-up. Id.

Plaintiff alleges that he told defendant Park that the confidential memoranda used to validate him as a gangmember were unreliable and the CDC 1030 forms regarding the confidential information provided plaintiff did not allow him proper notice, depriving him of a "fair opportunity to be heard." FAC, p. 15. Plaintiff also provided defendant Park with copies of the CDC 128 B form copies which had been stamped clearly with "'does not meet criteria,' and explained that the re-evaluators had unlawfully located and utilized 'clean' copies," i.e., copies that had not been stamped. Id., at 16. Although in a April 20, 2005, phone conversation defendant Park acknowledged plaintiff's position and had received the forms stamped as not meeting the gang validation criteria, plaintiff alleges defendant Park violated his due process rights and his liberty interest in release from the SHU and to parole because the gang and SHU status was relied on to find him unsuitable for parole in BPH hearings on August 1, 2007, and on December 7, 2009, and will continue to do so until expunged. Id. In addition, he claims Corcoran State Prison's SHU constitutes "atypical and significant confines," by which plaintiff no doubt intends to invoke Sandin v. Conner, 515 U.S. 472, 484, 115 S. Ct. 2293, 2300 (1995) (state regulations give rise to a liberty interest protected by the Due Process Clause of the federal constitution only if those regulations pertain to "freedom from restraint" that "imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life.")[5]

[5] "[W]e recognize that States may under certain circumstances create liberty interests which are protected by the Due Process Clause. See also Board of Pardons v. Allen, 482 U.S.

The 60-day ad seg extension expired on February 7, 2005, with no action taken; on April 25, 2005, non-party Powell issued a 90-day extension "'to complete the casework.'" FAC, p. 16. In or around September of 2005, plaintiff was validated as a gangmember based on nine of the ten items which had been submitted in November of 2000 in a CDC 128 B-2 form, "fraudulently" back-dated to April 13, 2005 (evident by reference to the April 25, 2005, CDC 128G form), signed by defendants Ruff, Fischer and Williams. Id., at 16. The items used included those previously documented as not meeting the required criteria for gang validation. Id. Plaintiff reiterates the deprivations from which he suffers as a result of the allegedly wrongful gang validation and SHU placement as set forth with regard to defendant Park. Id., at 17. In addition, he claims that there is an established state law "'inactive' review procedure" for release of those who have been properly validated from the validated gang SHU to general population once six years have lapsed since the latest item used to determine SHU placement, which should have led to his release from the SHU on June 8, 2006, separate and apart from the allegedly unconstitutional gang validations of 2000, 2003, 2004 and 2005, Id., at 17-18.

Defendants Berna and Garcia conducted a search of plaintiff's cell on October 3, 2006; on November 14, 2006, defendant Berna gave plaintiff a CDC 128 B dated Nov. 13, 2006, stating that the search had turned up a list of CDC numbers and names of three inmates. FAC, p. 18. Defendant Berna also gave plaintiff a CDC 1030 form which stated that a confidential informant had identified plaintiff "as functioning under the NF/NS format and/or guidelines." Id. The basis for the CDC 1030 form to be a confidential memorandum is claimed to be a June 8, 2006, confidential memorandum by defendant Garcia. Id. Although the Nov. 13,

---

369, 107 S.Ct. 2415, 96 L.Ed.2d 303 (1987). But these interests will be generally limited to freedom from restraint which, while not exceeding the sentence in such an unexpected manner as to give rise to protection by the Due Process Clause of its own force, see, e.g., Vitek v. Jones, 445 U.S. 480, 493, 100 S.Ct.1254, 1263-1264 (transfer to mental hospital), and Washington[ v. Harper], 494 U.S. 210, 221- 222, 110 S.Ct. 1028, 1036-1037 (involuntary administration of psychotropic drugs), nonetheless imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." Sandin v. Conner, supra.

2006, CDC 128 B was not submitted for use against plaintiff, defendant Berna within it claims plaintiff's continued association with prison gang members/associates and it remains in plaintiff's prison file and has an adverse effect. Id.

On November 15, 2006, although plaintiff established that the documentation being used to validate his gang affiliation was uncorroborated or otherwise lacked credibility, defendants Cronjagar, Gomez and Berna, who formed the Institution Gang Investigators (IGI), violated plaintiff's due process rights by forwarding confidential memoranda to the Office of Correctional Safety (OCS) without including plaintiff's arguments. FAC, pp. 6, 19-21. Plaintiff contends defendants Cronjagar, Gomez and Berna also caused him to be found unsuitable for parole in Aug. 2007 and Dec. 2009, caused his extended parole reconsideration dates and his unlawful confinement in CSP-Corcoran SHU, and will continue to have a negative impact on plaintiff absent expungement of the allegedly unsubstantiated documentation. Id., at 21.

On April 25, 2007, defendant Ruff validated plaintiff as a prison gang member and denied him inactive status based on the confidential memorandum defendant Garcia had written, dated June 8, 2006. FAC, p. 21. Plaintiff accuses defendant Ruff of having committed a felony, pursuant to Cal. Penal Code § 134, by having allegedly fraudulently claims that on October 23, 2000, a CDC 128 B-2 has issued identifying plaintiff as an active gangmember when no such documentation has ever existed. Id. Plaintiff realleges all of his claims of due process right violations and his claims regarding being confined to the SHU at CSP-Corcoran against this defendant in the processing of validation package without plaintiff's rebuttal with regard to the confidential memorandum. Id.

Plaintiff's efforts to bring his argument against the credibility of the June 8, 2006, memo were frustrated when defendant Berna, who admitted that he could not locate the rebuttal to be sent to OCS and defendants Gomez and Florez, in June 2007, failed to take any corrective action. FAC, p. 22. Plaintiff asserts that their conduct caused plaintiff to be retained in the SHU and "a lifer inmate has never been paroled from the gang SHU." Id.

Defendant Berna submitted two CDC 128 B's dated in December15 and 19 in 2008, as additional documents in support of the confidential memorandum because plaintiff was arguing that the memo alone was insufficient. FAC, p. 22. Defendants Fischer, McClure, Buechner on December 24, 2008, and defendants Williams, Burt and Kissel on June 15, 2009, issued CDC 128 B-2 forms validating plaintiff as a gang member. Id., at 22-23. These actions fraudulently documented the December 2008 CDC-128 B forms as supporting the unreliable confidential memorandum in violation of plaintiff's constitutional rights. Id., at 23.

Plaintiff contends that to avoid further false claims of gang affiliation, plaintiff, in 2007, took the "drastic steps" of not taking a cellmate and not speaking with those alleged to be functioning as gang affiliates. FAC, p. 23. Prison staff has informed plaintiff that he is now on a real prison gang hit list and his life endangered, the responsibility for which plaintiff imputes to the allegedly unreliable June 6, 2008, confidential memo written by defendant Garcia and "fraudulent' supporting documents," inasmuch as he contends that he would have otherwise been released from the gang SHU in 2006 and been paroled in 2007 or 2009. Id., at 24.

Plaintiff identifies as his first claim for relief, a violation of his Fourteenth Amendment due process rights in, inter alia, the "fabricating" of documents placed in his files adversely impacting him and refusing to remove those documents from his files. FAC, p. 31. His second claim for relief is that his right to due process under the California constitution have been violated by defendants as well as specific state penal code sections. Id., at 32. His third claim for relief is that the CDCR, in willfully failing to maintain accurate records leading to adverse determinations against him by CDCR and BPH violates a federal statute, 5 U.S.C. § 552a. Id. Plaintiff's fourth claim for relief is that his First Amendment right to free speech and to access the courts have been violated by retaliation by defendants for filing grievances and court actions in the form of, inter alia, the re-validation of plaintiff as a prison gang member based on unreliable evidence. Id., at 32-33. Plaintiff's fifth claim is that he has been subjected to cruel and unusual punishment by the conduct of defendants. Id., at 33. His sixth claim for relief,

like his second, is a claim predicated on state law; in this claim, he alleges that he has been subjected to cruel or unusual conditions in violation of Art. I, Section 17 of the California constitution. Id., at 34. Plaintiff's seventh and final claim appears to be somewhat duplicative of his fourth claim inasmuch as he alleges a denial of his right of court access and of due process based on false documents being placed in his files to deny him law library access to effectively pursue his actions. Id. Plaintiff seeks declaratory and injunctive relief, as well as money damages, including punitive damages. Id., at 3.

Motions to Dismiss

*Legal Standard for Motion to Dismiss.*

In order to survive dismissal for failure to state a claim pursuant to Rule 12(b)(6), a complaint must contain more than a "formulaic recitation of the elements of a cause of action;" it must contain factual allegations sufficient to "raise a right to relief above the speculative level." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 127 S.Ct. 1955, 1965 (2007). "The pleading must contain something more...than...a statement of facts that merely creates a suspicion [of] a legally cognizable right of action." Id., quoting 5 C. Wright & A. Miller, Federal Practice and Procedure § 1216, pp. 235-236 (3d ed. 2004). "[A] complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, ___ U.S. ___, 129 S.Ct. 1937, 1949 (2009) (quoting Twombly, 550 U.S. at 570, 127 S.Ct. 1955). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id.

In considering a motion to dismiss, the court must accept as true the allegations of the complaint in question, Hospital Bldg. Co. v. Rex Hospital Trustees, 425 U.S. 738, 740, 96 S. Ct. 1848, 1850 (1976), construe the pleading in the light most favorable to the party opposing the motion and resolve all doubts in the pleader's favor. Jenkins v. McKeithen, 395 U.S. 411, 421, 89 S. Ct. 1843, 1849, reh'g denied, 396 U.S. 869, 90 S. Ct. 35 (1969). The court will "'presume that general allegations embrace those specific facts that are necessary to support the claim.'"

National Organization for Women, Inc. v. Scheidler, 510 U.S. 249, 256, 114 S.Ct. 798, 803 (1994), quoting Lujan v. Defenders of Wildlife, 504 U.S. 555, 561, 112 S. Ct. 2130, 2137 (1992). Moreover, pro se pleadings are held to a less stringent standard than those drafted by lawyers. Haines v. Kerner, 404 U.S. 519, 520, 92 S. Ct. 594, 596 (1972).

The court may consider facts established by exhibits attached to the complaint. Durning v. First Boston Corp., 815 F.2d 1265, 1267 (9th Cir. 1987). The court may also consider facts which may be judicially noticed, Mullis v. United States Bankruptcy Ct., 828 F.2d 1385, 1388 (9th Cir. 1987); and matters of public record, including pleadings, orders, and other papers filed with the court, Mack v. South Bay Beer Distributors, 798 F.2d 1279, 1282 (9th Cir. 1986). The court need not accept legal conclusions "cast in the form of factual allegations." Western Mining Council v. Watt, 643 F.2d 618, 624 (9th Cir. 1981).

A pro se litigant is entitled to notice of the deficiencies in the complaint and an opportunity to amend, unless the complaint's deficiencies could not be cured by amendment. See Noll v. Carlson, 809 F. 2d 1446, 1448 (9th Cir. 1987).

Discussion

As all of three of the motions to dismiss, brought cumulatively by defendants Berna, Cate, Cronjagar, Florez, Garcia, Gomez, Park, Buechner, Burt, Fischer, McClure, Ruff and Williams, move for dismissal, under Fed. R. Civ. P. 12(b)(6), as to the same claims, the second, third and sixth claims for relief, on the same grounds, the court will consider them together. [First] Motion to Dismiss (FMTD)(docket # 38-1), pp. 1-6[6]; [Second] Motion to Dismiss (SMTD), pp. 1-7 (docket # 42-1); [Third] Motion to Dismiss (TMTD)(docket # 55-1), pp. 1-5. As to defendant Park (docket # 42), before again seeking dismissal of grounds two, three and six as with all other defendants who have been served, this defendant first contends plaintiff's claim against him is barred by the statute of limitations. As a finding that the claim is

[6] The court's electronic pagination of the supporting memorandum to each motion is referenced.

so barred would require dismissal of defendant Park altogether, the court will address this ground for dismissal first.

*Statute of Limitations*

As defendant Park contends, plaintiff's claim against him arises from an April 20, 2005 telephone conversation wherein plaintiff allegedly conveyed to Park plaintiff's position as to the unreliability of the gang validation documentation and to a lack of notice, which position was acknowledged by Park. See above & SMTD, pp. 1, 4.

"Actions brought pursuant to 42 U.S.C. § 1983 are governed by the state statutes of limitations for personal injury actions." Morales v. City of Los Angeles Wilson v. Garcia, 214 F.3d 1151, 1154 (9th Cir. 2000), citing Wilson v. Garcia, 471 U.S. 261, 275, 105 S.Ct. 1938 [] (1985); Fink v. Shedler, 192 F.3d 911, 914 (9th Cir.1999), cert. denied, 529 U.S. 1117, 120 S.Ct. 1979, [] (2000). In California, there is a two-year statute of limitations in § 1983 cases. See Cal. Civ. Proc. Code § 335.1; Maldonado v. Harris, 370 F.3d 945, 954 (9th Cir. 2004); Jones v. Blanas, 393 F.3d 918, 927 (9th Cir. 2004)("[f]or actions under 42 U.S.C. § 1983, courts apply the forum state's statute of limitations for personal injury actions.").

"Federal courts also apply a forum state's law regarding tolling, including equitable tolling when not inconsistent with federal law. See Hardin v. Straub, 490 U.S. 536, 537-39, 109 S.Ct. 1998, 104 L.Ed.2d 582 (1989); Bacon v. City of Los Angeles, 843 F.2d 372, 374 (9th Cir.1988)." Fink v. Shedler, 192 F.3d at 914. Both defendant and plaintiff appear to be somewhat confused as to the application of Cal. Civ. Proc. Code § 352.1(a) to plaintiff. Pursuant to Cal. Civ. Proc. Code § 352.1(a), a prisoner serving a term of less than life is entitled to the two-year tolling provision before the commencement of the statute of limitations for bringing a civil rights action. Fink v. Shedler, 192 F.3d 911 at 914. Defendant, at least in the motion papers, concedes that plaintiff, who is incarcerated, is entitled to the two years of statutory tolling beyond the statutory limitations period for personal injury actions. SMTD, p. 4. Plaintiff, on the other hand, and wrongly, avers as a "lifer inmate," he is thereby entitled to

"additional tolling." Opposition (Opp.) to SMTD, p. 2. In the reply, defendant changes his original position but in correcting plaintiff also misses the mark, averring that plaintiff as a person who admits to serving a life sentence, he is not entitled to tolling. SMTD Reply, p. 3. While this is correct as far as it goes, and, indeed, plaintiff maintains both within his amended and in his opposition that he has a sentence of life, among the allegations of the amended complaint is a claim that the actions of this defendant, as well as the others, deprived him of his opportunity to be paroled at specific parole hearings, which leads to the inescapable implication that his life sentence includes the possibility of parole. Moreover, plaintiff's contention that his sentence of 17-years-to-life, i.e., that he has parole eligibility,[7] entitles him to the two-year statutory tolling is indeed accurate. Beard v. Lucio, 2009 WL 393016 *2 (C.D. Cal. 2009)(inmate sentenced to life term with possibility of parole entitled to statutory tolling, citing Martinez v. Gomez, 137 F.3d 1124, 1126 (9th Cir. 1998).

Defendant Park provides June 25, 2009, as the date on which this action was originally filed. SMTD, p. 4. This court does take judicial notice[8] that that is date the complaint was filed into the court's docket; however, application of the mailbox rule shows a June 19, 2009,[9] filing date (at least if liberally construed). Nevertheless, if the claim accrued, as defendant maintains, on the date of the phone conversation, April 20, 2005, then even with the two-year tolling, plaintiff's claim against defendant Park would be untimely by two months (60 days)(the difference between April 20, 2009, and the June 19, 2009, filing date).

---

[7] The contention was inappropriately included within his opposition to the third motion to dismiss and evidently intended as an inapposite surreply to defendant Park's reply. See docket # 60, p. 3.

[8] A court may take judicial notice of court records. See Barron v. Reich, 13 F.3d 1370, 1377 (9th Cir. 1994); MGIC Indem. Co. v. Weisman, 803 F.2d 500, 505 (9th Cir. 1986); United States v. Wilson, 631 F.2d 118, 119 (9th Cir. 1980).

[9] Pursuant to Houston v. Lack, 487 U.S. 266, 275-76, 108 S. Ct. 2379, 2385 (1988)(pro se prisoner filing is dated from the date prisoner delivers it to prison authorities). Douglas v. Noelle, 567 F.3d 1103, 1109 (9th Cir. 2009), holding that "the Houston mailbox rule applies to § 1983 complaints filed by *pro se* prisoners").

The key to determining the timeliness of this claim is, of course, the date of claim accrual. Notwithstanding, the application of the forum's state law regarding the statute of limitations, including statutory and equitable tolling, in the context of a § 1983 action, it is "federal law" which "governs when a claim accrues." Fink v. Shedler, 192 F.3d at 914, citing Elliott v. City of Union City, 25 F.3d 800, 801-02 (9th Cir.1994). "A claim accrues when the plaintiff knows, or should know, of the injury which is the basis of the cause of action." Id., citing Kimes v. Stone, 84 F.3d 1121, 1128 (9th Cir.1996); Johnson v. State of California, 207 F.3d 650, 653 (9th Cir. 2000)(accord), overruled on other grounds, Johnson v. California, 543 U.S. 499, 125 S. Ct. 1141 (2005).

Defendant Park is correct in that plaintiff's only allegation against him arises from the April 20, 2005, phone conversation. While plaintiff does not make a convincing argument under the continuing violation doctrine to toll the statute in this instance because it is not clear that the single action alleged against defendant Park constituted one of a "series of related acts, one or more of which falls within the limitations period" to injure plaintiff. SMTD Reply, p. 2, citing Green v. Los Angeles County Superintendent of Schools, 883 F.2d 1472, 1480-81 (9th Cir. 1989) quoting Bruno v. Western Elec. Co., 829 957, 961 (10th Cir. 1987). However, while defendant is correct that plaintiff's only claim against defendant Park arises from the phone conversation plaintiff had with him on April 20, 2005, neither is it reasonable to say the action accrued on the date of that alleged phone conversation. Plaintiff could not have known at that point whether or not defendant Park could assist him in the way he sought with regard to making known his protests concerning the lack of notice and claimed unreliability of the material on which his gang validation lay. However, he surely could and reasonably should have known by September of 2005 (no specific day provided) when he alleges that he received a copy of a signed CDC 128 B-2 validating him as a gang member based on nine of the ten original items submitted in November of 2000. Thus, it is at that point that plaintiff certainly should have known of any injury by defendant Park against him and the statute should run from no later than that date.

Plaintiff's claim against defendant Park, as alleged prior to the expiration of four years from a day in September of 2005, renders the claim timely. As the court will recommend denial of defendant Park's motion to dismiss on statute of limitations grounds, the court will now proceed to consider, along with the other defendants' motions, whether other grounds should be dismissed from the amended complaint.

As to the second and sixth grounds for relief, alleging a right to due process under state law, and a sixth ground for relief, claiming cruel and unusual punishment under state law, as to the defendants argue that plaintiff failed to plead compliance with the California Government Claims Act. FMTD, pp. 1-4; SMTD, pp. 1-2, 5-6; TMTD, pp. 1-4.[10]

Defendants contend that in order for plaintiff to proceed against them on tort claims for money damages, he must allege compliance with California's Government Claims Act, which he has failed to do in his amended complaint. FMTD, pp. 3-4. The state legislature has, indeed, provided a remedy for tort claims against public officials in the California Government Code, §§ 900, et seq. Defendants are correct that a tort claim against the state or state employees must be presented to the California Victim Compensation and Government Claims Board no later than six months after the cause of action accrues. FMTD, p. 3, citing, inter alia, Cal. Govt. Code §§ 910, 911.2, 945.4, 950, 950.2. Citing State v. Superior Court of Kings County (Bodde), 32 Cal. 4th 1234, 1245, 13 Cal. Rptr. 534 (2004), Mangold v. California Pub. Utils. Comm'n. 67 F.3d 1470, 1477 (9th Cir. 1995) (9th Cir. 1995) and Karim-Panahi v. Los Angeles Police Dept., 839 F.2d 621, 627 (9th Cir. 1988), defendants accurately state that conditions precedent to suit against a public employee include presentation of a written claim and action on or rejection of the claim and alleging compliance with the Government Claims Act. Id. Defendants rely on authority that claims for "'money or damages'" include those based directly

[10] As all defendants (except the two who are as yet unserved) make the same argument as to grounds two, three and six, the court will cite only the first motion to dismiss. However, the court will separately note plaintiff's opposition filed as to each motion as well as the separate replies to the opposition papers, where necessary.

on the California's constitution (as are plaintiff's, at least in part). Id., at 4, citing City of San Jose v. Superior Court (Lands Unlimited), 12 Cal.3d 447, 454 (1974); Nuremberg Actions v. County of Contra Costa, 697 F. Supp. 1111[, 1113] (N.D. Cal. 1988); County of Contra Costa v. State of California, 177 Cal. App.3d 62, 75 (1986)[11] ("'the fact that a constitutional provision is self executing does not relieve a party from complying with reasonable procedures for assertion of the right.'")  It is nevertheless clear that state law claims for which a plaintiff may seek declaratory of injunctive relief does not require compliance with claim presentation requirement. Nuremberg Actions v. County of Contra Costa, 697 F. Supp. at 1112, citing Cal. Govt. Code § 814. "[A] plaintiff must allege facts demonstrating or excusing compliance with the claim presentation requirement" or be "subject to a general demurrer for failure to state facts sufficient to constitute a cause of action," State v. Superior Court (Bodde), 32 Cal. 4th at 1243, or, in this court as to pendent/supplemental state law claims, be subject to a Rule 12(b)(6) motion on the same ground. Defendants contend that plaintiff failed to file a timely claim pursuant to the Government Claims Act and the time for doing so has long expired with respect to his second and sixth claims for relief. FMTD, p . 4.

In opposition, plaintiff contends that he used the form for prisoners to file a 42 U.S.C. § 1983 claim, which form does not require prisoners to plead compliance with the Government Claims Act; that exhaustion is a defense that must be proven, rather than a pleading requirement (citing Jones v. Bock, 549 U.S. 199 [, 127 S. Ct. 910) (2007))[12]; that although the court set forth in detail in the original detailed screening order the defects to be remedies, the court did not mention the failure to plead compliance with California's Government Claims Act;

---

[11] Abrogated on another ground by Department of Finance v. Commission on State Mandates, 100 Cal. App.4th 243 (2002), that judgment itself reversed by Department of Finance v. Commission on State Mandates, 30 Cal.4th 727, 134 Cal. Rptr. 237 (2003).

[12] Of course, this case speaks to the exhaustion of prison administrative remedies under the Prison Litigation Reform Act of 1995 before filing a civil rights complaint in federal court alleging deprivation of federal constitutional rights and is not apposite in this context.

and that he, in fact, nevertheless did comply with the Government Claims Act.  Opp. to FTMD, p. 1 (incorporated by reference in Opp. to STMD, p. 3; Opp. to TMTD, p. 2.

In reply, defendants contend that plaintiff does not claim to have alleged compliance with California's Government Claims Act, although they acknowledge that he now asserts for the first time that he has complied with it, they also argue that plaintiff has produced no evidence—such as a copy of the claim he claims to have submitted or of any correspondence in response to it or any description as to when the claim was submitted or any action taken—to show his compliance and that he cites no authority for the proposition that compliance with the act is an affirmative defense it is the defendants burden to prove.  FTMD Reply, p. 2; SMTD Reply, pp. 3-4; TMTD Reply, pp. 2-3.  Defendants are correct that the holding of Jones v. Bock, 549 U.S. at 216, 127 S. Ct. 910, that the failure to exhaust administrative remedies is an affirmative defense under the PLRA and that prisoners need not "specially plead or demonstrate exhaustion in their complaints," does not relate to the issue they raised.  Id. (and see footnote 11).  Defendants maintain that plaintiff's failure to plead compliance with the Government Claims Act should result in dismissal of claims two and six.  Id.

Plaintiff insists that he did submit the requisite claim to the California Victim Compensation and Government Claims Board, although he has as yet has not submitted any proof of same, while defendants are correct that it is a pleading requirement to proceed on his state law claims.  The Ninth Circuit has found that where a district court properly dismissed state law tort claims for a failure to allege compliance with California tort claim procedures, the court erred in having failed to instruct the pro se plaintiff as to the requirements of alleging compliance with the procedures.  Karim-Panahi v. Los Angeles Police Dept. 839 F.2d at 627.  Plaintiff is correct that neither the complaint form he used, nor this court's screening order alerted him to that necessity with regard to any state law claims.  Therefore, while the court will grant defendants' motions as to claims two and six, plaintiff will be granted leave to amend to meet the pleading requirement.   Plaintiff is cautioned, however, that pleading to facts without a good faith

basis may result in the sanction of dismissal of the entire action.

As to the third ground for relief, based on the federal Privacy Act, 5 U.S.C. § 552a, this claim should be dismissed, defendants contend, because the defendants are alleged to be state, and not federal, employees. FMTD, pp. 1, 4-5. Defendants assert that the purpose of the Act, quoting Doe v. Chao, 540 U.S. 614, 618, 124 S. Ct. 1204 (2004), is "'protect the privacy of individuals identified in information systems maintained by Federal agencies....'" They argue correctly that the private right of civil action created by the Act is limited specifically to actions against agencies of the federal government and is not applicable against state and local officials. FMTD, p. 4, citing Unt v. Aerospace Corp., 765 F.2d 1440, 1447 (9th Cir. 1985) which cites, inter alia, Polchowski v. Gorris, 714 F.2d 749, 752 (7th Cir. 1983).

In opposition, plaintiff argues that the CDCR shares records with federal agencies; federal monies directed to California are used by the CDCR, the CDCR is a "source agency" whose employees receive payment by way of the "Federal Benefit Program" as described in 5 U.S.C. § 552a, and this court has authority to grant declaratory and injunctive relief. Opp. to FMTD, p. 2; Opp. to SMTD, p. 3; Opp. to TMTD, p. 2 (incorporates earlier arguments by reference).

In reply, defendants counter, inter alia, that the mere fact that the State of California and the CDCR received funding from and that the CDCR is subject to some federal regulation does not bring it within the reach of the Privacy Act. FMTD Reply, pp. 3-4; SMTD Reply, pp. 5-7; TMTD Reply, p. 3. Defendants cite a Ninth Circuit case holding that federal regulation of state agencies administering the Medicaid program in California (Medi-Cal) did not subject such agencies to the Privacy Act provisions. FMTD Reply, p. 3, quoting St. Michael's Convalescent Hospital v. State of California, 643 F.2d 1369, 1373-74 (9th Cir. 1981):

> Federal funding reaches a countless number of activities of local and state governments. To assure that the federal funds are spent for the purposes for which they were intended, extensive federal regulations are promulgated and must be complied with. However, those regulations do not convert acts of local and state

> governmental bodies into federal governmental acts. *United States v. Orleans*, 425 U.S. 807, 816, 96 S.Ct. 1971, 1976, 48 L.Ed.2d 390 (1976); *Forsham v. Harris*, 445 U.S. 169, 100 S.Ct. 977, 63 L.Ed.2d 293 (1980). "(E)xtensive, detailed and virtually day-to-day supervision" by the federal government is needed before "agency" status could be said to attach. [Citations omitted].

In St. Michael's, the Ninth Circuit determined that though the state administered Medi-Cal program was "'highly regulated by the federal government," it did not appear that the federal government exercised the "'extensive, detailed and virtually day-to-day supervision' over the program ... needed to characterize the state bodies as federal agencies." 643 F.2d at 1374.

The Ninth Circuit has recognized in a case involving claims under § 1983 that the Privacy Act affords a civil remedy provision "far less expansive" than the protection afforded by the Act:

> This court has held that the private right of civil action created by the Privacy Act, see 5 U.S.C. § 552a(g)(1) (providing that a private individual "may bring a civil action against the agency"), "is specifically limited to actions against agencies of the United States Government. The civil remedy provisions of the statute do not apply against private individuals, *state agencies*, private entities, or state and local officials," *Unt v. Aerospace Corp.*, 765 F.2d 1440, 1447 (9th Cir.1985) (citations omitted) (emphasis added); see also *St. Michael's Convalescent Hosp. v. California*, 643 F.2d 1369, 1373 (9th Cir.1981) (holding that the Privacy Act provides no private right of action against "state agencies or bodies").

Dittman v. California, 191 F.3d 1020, 1026 (9th Cir. 1999); see also, Birks v. Santos, 2008 WL 2413171 * 1(E.D. Cal. 2008)(Privacy Act does not govern state officials or state agencies but only federal agencies and their maintenance of federal government records as regards individuals). Defendants motion to dismiss plaintiff's third claim should be granted.

As to the seventh ground for relief, the court, sua sponte, finds this claim to be essentially duplicative of the fourth ground for relief (see above) with respect to the claims that still proceed following dismissal of a number of defendants (and claims not related to plaintiff's extended SHU placement/gang validation claims) in the order, filed on October 28, 2010 (docket # 25), and, construing it as subsumed within ground four, will recommend dismissal of ground

seven from the amended complaint.

Leave to Amend

If plaintiff chooses to amend the complaint, plaintiff must demonstrate how the conditions complained of have resulted in a deprivation of plaintiff's constitutional rights. See Ellis v. Cassidy, 625 F.2d 227 (9th Cir. 1980). Also, the complaint must allege in specific terms how each named defendant is involved. There can be no liability under 42 U.S.C. § 1983 unless there is some affirmative link or connection between a defendant's actions and the claimed deprivation. Rizzo v. Goode, 423 U.S. 362, 96 S.Ct. 598 (1976); May v. Enomoto, 633 F.2d 164, 167 (9th Cir. 1980); Johnson v. Duffy, 588 F.2d 740, 743 (9th Cir. 1978). Furthermore, vague and conclusory allegations of official participation in civil rights violations are not sufficient. See Ivey v. Board of Regents, 673 F.2d 266, 268 (9th Cir. 1982).

In addition, plaintiff is informed that the court cannot refer to a prior pleading in order to make plaintiff's amended complaint complete. Local Rule 220 requires that an amended complaint be complete in itself without reference to any prior pleading. This is because, as a general rule, an amended complaint supersedes the original complaint. See Loux v. Rhay, 375 F.2d 55, 57 (9th Cir. 1967). Once plaintiff files an amended complaint, the original pleading no longer serves any function in the case. Therefore, in an amended complaint, as in an original complaint, each claim and the involvement of each defendant must be sufficiently alleged.

Plaintiff is being granted leave to amend for the sole purpose of conforming with the pleading requirements for proceeding on the state law claims that are being dismissed. He is cautioned that while he must include all defendants and claims on which he is now proceeding in any further amended complaint, he may not re-allege claims against defendants who have previously dismissed from his first amended complaint.[13]

////

[13] See Order, filed on October 28, 2010 (docket # 25).

Accordingly, IT IS HEREBY ORDERED that:

1. Plaintiff's "motion for a default judgment," filed on February 25, 2011 (docket # 41) is denied.

2. Plaintiff's motion for an extension of time to provide contact information for defendants Kissel and Roman, filed on May 11, 2011 (docket # 69), is denied as moot.

3. Defendants' motions to dismiss, filed on February 22, 2011 (docket # 38), by defendants Cate, Garcia, Berna, Cronjagar, Gomez and Florez; defendant Park's motion to dismiss, filed on February 28, 2011 (docket # 42); and defendants' motion to dismiss, filed on March 28, 2011 (docket # 55), brought by defendants McClure, Ruff, Williams, Burt, Fischer and Buechner, are granted as to claims two and six, but plaintiff is granted leave to amend solely to meet the pleading requirements of the California Government Claims Act, as set forth above, with respect to claims two and six, within twenty-eight days. Should plaintiff fail to amend, the court will recommend dismissal of these claims.

IT IS RECOMMENDED that:

1. Defendant Park's motion to dismiss, filed on February 28, 2011 (docket # 42), be denied on the ground that plaintiff's action is barred by the statute of limitations;

2. Defendants' motions to dismiss, filed on February 22, 2011 (docket # 38), by defendants Cate, Garcia, Berna, Cronjagar, Gomez and Florez; defendant Park's motion to dismiss, filed on February 28, 2011 (docket # 42); and defendants' motion to dismiss, filed on March 28, 2011 (docket # 55), brought by defendants McClure, Ruff, Williams, Burt, Fischer and Buechner, be granted as to claim three and this claim be dismissed; and

3. Claim seven, construed as essentially subsumed within Claim four as it relates to the claims and defendants upon which this case is proceeding, be dismissed as duplicative.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l). Within fourteen days after being served with these findings and recommendations, any party may file written

objections with the court and serve a copy on all parties. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." Any reply to the objections shall be served and filed within fourteen days after service of the objections. The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order. Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

DATED: July 1, 2011

/s/ Gregory G. Hollows

GREGORY G. HOLLOWS
UNITED STATES MAGISTRATE JUDGE

GGH:009
lope1760.mtd