IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

ANDREW RICK LOPEZ,

            Plaintiff,              No. CIV S-09-1760 MCE GGH P

    vs.

ARNOLD SCHWARZENEGGER, et al.,    ORDER &

           Defendants.           FINDINGS AND RECOMMENDATIONS

_____/

Introduction

        Take multiple claims against multiple defendants, multiple motions by all parties, multiple exhaustion requirements, and add in a bit of obstinacy/defiance on the part of plaintiff, and one has the recipe for litigation chaos. This adjudication will lessen the chaos once and for all.

        Plaintiff, a state prisoner proceeding pro se, seeks relief pursuant to 42 U.S.C. § 1983. Pending before the court are: 1) a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6), filed by defendants Roman and Kissel, on July 25, 2011, to which plaintiff filed his opposition on August 15, 2011, after which these defendants filed a reply on August 18, 2011; 2) plaintiff's "notice" that he was served at the wrong address and motion to strike new matter raised in defendants Roman's and Kissel's reply, filed on September 1, 2011, which these defendants

1   opposed on September 7, 2011; 3) plaintiff's requests to extend the discovery deadline, filed on

2   October 11, 2011, and on October 31, 2011, the latter of which was opposed by defendants on

3   December 20, 2011; 4) plaintiff's various motions for appointment of counsel, for law library

4   access, which include, inter alia, "notices" of "third party interference" and of "corruption," filed

5   on October 17, 2011, October 18, 2011, October 31, 2011, November 9, 2011 and November 16,

6   2011; 5) plaintiff's motion to serve subpoenas and for subpoena forms, filed on October 17,

7   2011; 6) plaintiff's "motion for order requiring defendant Cate to fire Corcoran employees

8   obstructing access to the courts," filed on November 14, 2011, to which defendants filed their

9   response on December 20, 2011; 7) plaintiff's "objections and formal complaint," filed on

10  December 1, 2011, seeking rulings on his pending motions; 8) plaintiff's "notice of theft" of his

11  legal documents by defendants, filed on December 19, 2011.

12  Background

13          The gravamen of this action is plaintiff's allegation of being subjected to extended

14  housing in the SHU (special/security housing unit) or Ad Seg (administrative segregation) arising

15  from his continued validation as a prison gang member from 2003 on, predicated on allegedly

16  inadequate and/or fraudulent supporting evidence.  Plaintiff claims the gang validation SHU

17  placement despite the lack of documentation of gang activity in his files will continue to impact

18  him negatively with regard to parole consideration and classification score and levels as long as

19  the placement is retained in his files.  Id., at 25.  First Amended Complaint (FAC), pp. 15-25 (see

20  order & findings and recommendations, filed on July 5, 2011 (docket # 75), p. 3.

21          By order, filed on September 14, 2011, Judge England adopted the findings and

22  recommendations of the undersigned, filed on July 5, 2011.  The district judge's order adopted

23  the adjudication of three separate motions to dismiss, under Fed. R. Civ. P. 12(b)(6), and claims

24  three and seven were dismissed outright, as a result of the motions brought by defendants Cate

25  \\\\\

26  \\\\\

1   (official capacity only), Garcia, Berna, Cronjeagar,[1] Gomez, Florez; Park, McClure, Russ,

2   Williams, Burt, Fischer and Buechner.  As to claims two and six (state law claims), in the

3   undersigned's order, filed on July 5, 2011 at p. 19 (which was included with the separate findings

4   and recommendations previously referenced), defendants' motions to dismiss had been granted

5   but plaintiff was therein granted leave to amend within twenty-eight days "solely to meet the

6   pleading requirements of the California Government Claims Act...."  This was somewhat

7   modified by Judge England's order, wherein it was set forth, that claims two and six were

8   dismissed but that plaintiff was nevertheless "granted leave to amend solely to state how he has

9   satisfied the pleading requirements of the California Government Claims Act with respect to

10  these claims, citing the applicable facts and/or any circumstances precluding him from providing

11  specific documentation of such compliance."  See Order, filed on Sept. 14, 2011, p. 2.  Although

12  no specific deadline for the filing of any such amended complaint is therein provided, it is

13  reasonable to construe the order as implicitly providing an additional twenty-eight days from the

14  date of Judge England's order, for the filing of such an amended complaint, which is a very

15  liberal extension of time from the order, filed on July 5, 2011.  In any event, plaintiff totally

16  failed to file a second amended complaint.  Indeed, plaintiff objected to having to amend his

17  complaint, indicating, in an untimely filing with respect to the July 5, 2011 order, that he

18  intended to stand on the first amended complaint so that he would not lose his right to appeal the

19  dismissal of claims and defendants, and re-hashed his argument that he did not need to plead

20  compliance in order to proceed with claims two and six, which the court had previously

21  comprehensively addressed.  See plaintiff's "notice of intent to stand on complaint," filed on

22  Sept. 6, 2011.  Plaintiff's concern regarding an alleged inability to raise dismissed claims on

23  appeal is ill-founded.  "An appeal from a final judgment draws in question all earlier, non-final

24

25          [1]  Defendant Cronjeagar's name has been variously spelled by defendants' counsel; it
    appears that plaintiff's original spelling of the name is correct if defendants' counsel's latest
26  filings are correct.

3

1   orders and rulings which produced the judgment." <u>Litchfield v. Spielberg</u>, 736 F.2d 1352, 1355

2   (9th Cir. 1984), citing <u>Munoz v. Small Business Administration</u>, 644 F.2d 1361, 1364 (9th

3   Cir.1981); <u>see also</u> <u>Lovell v. Chandler</u>, 303 F.3d 1039, 1049 (9th Cir. 2002).  Plaintiff did

4   submit, however, certain documentation in what appears to have been something of an effort to

5   demonstrate compliance with the California Government Claims Act, which will be addressed

6   below.

7   <u>Motion to Dismiss</u>

8          The last two of the fifteen remaining defendants, Roman and Kissel, have brought

9   their motion to dismiss under Fed. R. Civ. P. 12(b)(6), the legal standard for which was set forth

10  in the July 5, 2011, findings and recommendations, Docket # 75, pp. 8-9, and is incorporated by

11  reference herein.  Defendant Roman contends that he should be dismissed from this case because

12  plaintiff's claims against him are barred by the statute of limitations.  MTD, Docket # 76-1, pp.

13  1, 3-4.  In addition, as set forth in three prior separate motions to dismiss by the thirteen other

14  defendants, defendants Roman and Kissel also seek dismissal of plaintiff's second, third and

15  sixth claims for relief.[2]  As plaintiff observes, defendants Roman and Kissel brought the pending

16  motion to dismiss, raising precisely the same basis for the dismissal of grounds two, three and

17  six[3] as were raised in the preceding three motions,[4] and the court incorporates by reference herein

18  the arguments and analysis set forth in its findings and recommendations, filed on July 5, 2011.

19

20      [2] Claim seven was construed by the court, sua sponte, as subsumed within claim four and
    dismissed as duplicative.  See July 5, 2011 order & findings and recommendations, pp. 17-18,
21  19, adopted by order, filed on Sept. 14, 2011.

22      [3] As the court set forth, inter alia, at docket # 75, pp. 7-8, plaintiff's second claim for
    relief is that his right to due process under the California constitution and specific state penal
23  code sections were violated by defendants; his third claim for relief is that the CDCR, in willfully
    failing to maintain accurate records leading to adverse determinations against him by CDCR and
24  BPH has violated a federal statute, 5 U.S.C. § 552a; his sixth claim for relief, like his second, is a
    claim predicated on state law – in this claim, he alleges he has been subjected to cruel or unusual
25  conditions in violation of Art. I, Section 17 of the California constitution.  FAC, pp. 32-34.

26      [4] See plaintiff's Opposition, dkt # 87, pp. 1-2.

1    Moreover, defendant Roman also raises a separate ground alleging that plaintiff is barred from

2    proceeding on his claims against him by the statute of limitations.

3            As to the contention that plaintiff's claim against defendant Roman is time-barred,

4    plaintiff alleges that his gang validation in November 2000, relied on six items: four alleged

5    informant statements and two CDC 128 B forms based on alleged staff documentation.  FAC, p.

6    15.  The Nov. 15, 2000 128 B-2 form/report rejected four additional CDC-128 B forms as not

7    meeting the gang validation criteria.  Id.  Thereafter, one of the two CDC 128 B reports found

8    reliable in November of 2000, was stamped as also failing to meet the requisite criteria.  Id.  In

9    2003 and 2004, without notice to plaintiff, the same ten items originally submitted in 2000 were

10   re-evaluated and plaintiff was validated as a prison gang member.  Id.  Defendant Roman was

11   involved in the 2003 gang validation.  Id.  Plaintiff was unaware of the re-evaluations until late

12   2004, when non-party R. Comfort issued a CDC 128 G form refusing to approve plaintiff's SHU

13   term based on unreliable validation documentation; he deferred the validation but approved a 60-

14   day Ad Seg placement extension for case follow-up.  Id.

15                        Claims two, three, six [and seven]

16           Defendant Kissel, on June 15, 2009, was among those defendants who issued

17   CDC 128 B-2 forms validating plaintiff as a gang member.  FAC, at 22-23.  These actions,

18   purportedly, fraudulently documented the December 2008 CDC-128 B forms as supporting the

19   unreliable confidential memorandum in violation of plaintiff's constitutional rights.  Id., at 23.

20            Defendants Roman and Kissel filed their motion prior to Judge England's

21   decision as to the motions to dismiss brought by the other defendants.  Once a decision of law is

22   made, it becomes the "law of the case," and absent clear error or changed circumstances should

23   not be changed.  See United States v. Estrada-Lucas, 651 F.2d 1261, 1263-64 (9th Cir.1980).

24   The law of the case doctrine provides that "a court is generally precluded from reconsidering an

25   issue that has already been decided by the same court, or a higher court in the identical case."

26   United States v. Cuddy, 147 F.3d 1111, 1114 (9th Cir. 1998), quoting United States v.

5

1   Alexander, 106 F.3d 874, 876 (9th Cir. 1997) (internal quotation and citation omitted).  In light

2   of Judge England's September 14, 2011, ruling it is now the law of the case that claims three and

3   seven have been dismissed.  See Order, filed on September 14, 2011 (docket # 93).  The court

4   will not revisit the parties' arguments which have been thoroughly considered in the July 5, 2011,

5   findings and recommendations, that have been adopted by the district judge.  Furthermore, as

6   defendants Roman and Kissel observe in their reply, plaintiff does not take issue in his

7   opposition with the dismissal of claim three.[5]  Reply, p. 2, citing Opp., p. 2.  Thus, Claims three

8   and seven (see footnote 2) are dismissed out of this litigation with respect to all defendants,

9   including, of course, the presently moving defendants.

10          As to the second and sixth grounds for relief (state law claims), the undersigned

11   has noted Judge England's modification of the order wherein plaintiff was granted leave to

12   amend.  The court made an extensive analysis in adjudicating the other defendants' motions to

13   dismiss that plaintiff was to make a showing of fulfilling the state government claims board

14   pleading requirement in order to proceed on claims two and six.  However, rather than simply

15   follow the court's direction to amend, plaintiff has decided to complicate matters by refusing to

16   amend, and then filing piecemeal, supposed evidence of compliance of filing a Tort Claims

17   (GCA) administrative claim.  However, the administrative claim(s) do not identify any of the

18   defendants in this action, and raise more questions about the timeliness of such an administrative

19   claim than they resolve.  See exhibits to docket # 87, filed on August 15, 2011, to the pending

20   motion to dismiss as brought by defendants Roman and Kissel, as well as docket # 100, filed on

21   October 18, 2011, with regard to having filed a state Government Claims Board Claim.

22          Plaintiff was told to amend his complaint with respect to Claims two and six

23   because the law requires that compliance with the Tort Claim Act (GCA) be pled as an element

24   of the cause of action.

25          _____

26   [5] As noted earlier, the dismissal of claim seven was a sua sponte dismissal on the basis it
     was duplicative of claim four, not at issue here.

1            The timely filing of a claim is an essential element
           of a cause of action against a public entity and
2            failure to allege compliance with the claims statute
           renders the complaint subject to a general demurrer.

3

4 Wood v. Riverside Gen. Hosp., 25 Cal. App. 4th 1113, 1119 (1994).

5 The same requirement applies to public employees. Briggs v. Lawrence, 230 Cal. App. 3d 605,

6 613 (1991). Compliance with the Tort Claim Act is *not* simply a procedural requirement, nor is

7 the matter one of an affirmative defense, but is a condition precedent to bringing suit, and is an

8 "essential element of the plaintiff's cause of action." Shirk v. Vista United School, 42 Cal. 4th

9 201, 209 (2007). Rather than simply follow mandatory directions, plaintiff filed a pleading

10 stating that he would rest on the First Amended Complaint. So be it. Nor will the filing of

11 indecipherable parts of supposed compliance with the filing requirement substitute for the

12 mandate that compliance be pled as part of the state cause of action.

13          Claims two and six (simply state law claims of violations of due process and cruel

14 and unusual punishment mirroring the federal claims) should be dismissed with prejudice.

15 Claims three and seven were previously universally dismissed as well.

16                *Statute of Limitations*

17          Within his first amended complaint, plaintiff alleges, as to defendant Roman, that

18 he was involved in plaintiff's gang validation in 2003 and 2004 predicated on ten items originally

19 submitted in 2000 in re-evaluations of which he "lacked knowledge ... until later 2004[] after-

20 the-fact." First Amended Complaint (FAC), p. 15. As defendant Roman argues, plaintiff makes

21 no allegation against him following this period. MTD (docket # 76-1), p. 4.

22          As the court has previously set forth:[6] "[a]ctions brought pursuant to 42 U.S.C. §

23 1983 are governed by the state statutes of limitations for personal injury actions." Morales v.

24 City of Los Angeles Wilson v. Garcia, 214 F.3d 1151, 1154 (9th Cir. 2000), citing Wilson v.

25

26        [6] See docket # 75, pp. 10-11.

7

1    Garcia, 471 U.S. 261, 275, 105 S.Ct. 1938 [] (1985); Fink v. Shedler, 192 F.3d 911, 914 (9th

2    Cir.1999), cert. denied, 529 U.S. 1117, 120 S.Ct. 1979, [] (2000).  In California, there is a two-

3    year statute of limitations in § 1983 cases.  See Cal. Civ. Proc. Code § 335.1; Maldonado v.

4    Harris, 370 F.3d 945, 954 (9th Cir. 2004); Jones v. Blanas, 393 F.3d 918, 927 (9th Cir.

5    2004)("[f]or actions under 42 U.S.C. § 1983, courts apply the forum state's statute of limitations

6    for personal injury actions.").

7         "Federal courts also apply a forum state's law regarding tolling, including

8    equitable tolling when not inconsistent with federal law.  See Hardin v. Straub, 490 U.S. 536,

9    537-39, 109 S.Ct. 1998, 104 L.Ed.2d 582 (1989); Bacon v. City of Los Angeles, 843 F.2d 372,

10   374 (9th Cir.1988)."  Fink v. Shedler, 192 F.3d at 914.

11        Pursuant to Cal. Civ. Proc. Code § 352.1(a), a prisoner serving a term of less than

12   life is entitled to the two-year tolling provision before the commencement of the statute of

13   limitations for bringing a civil rights action.  Fink v. Shedler, 192 F.3d 911 at 914.  As has been

14   previously determined, plaintiff is entitled to the two-year statutory tolling.  See docket # 75, at p.

15   11.   No party takes issue with this determination.

16        Key to determining the timeliness of this claim is, of course, the date of claim

17   accrual.  Notwithstanding, the application of the forum's state law regarding the statute of

18   limitations, including statutory and equitable tolling, in the context of a § 1983 action, it is

19   "federal law" which "governs when a claim accrues."  Fink v. Shedler, 192 F.3d at 914, citing

20   Elliott v. City of Union City, 25 F.3d 800, 801-02 (9th Cir.1994).  "A claim accrues when the

21   plaintiff knows, or should know, of the injury which is the basis of the cause of action."  Id.,

22   citing Kimes v. Stone, 84 F.3d 1121, 1128 (9th Cir.1996); Johnson v. State of California, 207

23   F.3d 650, 653 (9th Cir. 2000) (accord), overruled on other grounds, Johnson v. California, 543

24   U.S. 499, 125 S. Ct. 1141 (2005).

25   \\\\\

26   \\\\\

1    Application of the mailbox rule shows, liberally construed, a June 19, 2009,[7]

2    filing date.  Nevertheless, if the claim accrued at any time in late 2004, even as late as December

3    31, 2004, the statute of limitations and the tolling statute would have run on plaintiff's claim

4    against defendant Roman, on the face of it, by the end of 2008, rendering his June 19, 2009,

5    filing as to defendant Roman untimely.  Plaintiff, however, argues for tolling during the period

6    when his claims as to this defendant were being administratively exhausted, contending that his

7    administrative remedies were not exhausted until March 20, 2006.  Opp., p. 2.[8]  It is inarguable

8    that a prisoner cannot proceed to federal court while exhausting his administrative remedies and

9    that the Ninth Circuit has determined that the statute of limitations "must be tolled while a

10    prisoner completes the mandatory exhaustion process" as required pursuant to 42 U.S.C. §

11    1997e(a).  Brown v. Valoff, 422 F.3d 926, 942, 943 (9th Cir.2005), citing McKinney v. Carey,

12    311 F.3d 1198, 1200 (9th Cir.2002).  Defendant Roman does not dispute that plaintiff is entitled

13    to tolling for the period of administrative exhaustion, but contends that the administrative

14    exhaustion process is subsumed within the two-year tolling period afforded by Cal. Civ. Proc.

15    Code § 352.1(a).   Reply (dkt # 88), p. 3.[9]  Although the court agrees with the authority cited by

16    the defendant,[10] it does not resolve the question, and, indeed, "[i]t is unsettled whether [the

17    _____

18    [7] Pursuant to Houston v. Lack, 487 U.S. 266, 275-76, 108 S. Ct. 2379, 2385 (1988) (pro
se prisoner filing is dated from the date prisoner delivers it to prison authorities).  Douglas v.

19    Noelle, 567 F.3d 1103, 1109 (9th Cir. 2009), holding that "the Houston mailbox rule applies to §
1983 complaints filed by *pro se* prisoners").

20    [8] Plaintiff attaches as Exhibit A to his opposition, a copy of a third level administrative
appeal denial, dated March 20, 2006; however, this court does not consider this extraneous

21    exhibit in order not to transmute this Rule 12(b)(6) motion into one for summary judgment under
Rule 56.  Swedberg v. Marotzke, 339 F.3d 1139, 1142 (9th Cir. 2003)( "a district court must take

22    some affirmative action to effectuate conversion" of a 12(b)(6) motion into a summary judgment
motion).

23    
24    [9] Plaintiff's motion to strike a portion of the reply as raising a new issue in this regard is
denied because defendants are correct that they simply respond to an argument raised by plaintiff

25    in his opposition.

26    [10] See Reply, p. 3, citing Funtanilla v. Rubles, 2003 WL 21309491 * 6  (N.D. Cal. 2003)
(addressing the question of whether the prisoner-plaintiff could benefit from the insanity tolling

1  administrative exhaustion] period of tolling should be subsumed in the two year statutory tolling

2  period of Cal.Code § 352.1 or added as an additional period of tolling." Johnson v. Director of

3  Corrections, 2007 WL 1241834 *1, n. 4 (E.D. Cal. 2007)[11]; id., 2008 WL 3374494 * 7, n. 5 (E.D.

4  Cal. 2008).[12]

5          Moreover,  the undersigned can find no authority which would legitimately

6  distinguish principles of tolling of limitations periods in prisoner cases from tolling in any other

7  type of litigation.  That is, when two or more reasons for tolling exist, common sense requires the

8  conclusion that those reasons will toll concurrently during the time they are both active, and are

9  not tacked consecutively, one on top of another, to extend the limitations period.  See Gutierrez

10  v. Butler, 2008 WL 436948 (E.D. Cal. 2008) (finding time to exhaust administrative remedies to

11  have coexisted with the two-year tolling for the disability of imprisonment but not to have

12  extended the limitations period),[13] citing Rose v. Petaluma & S.R. Ry. Co., 64 Cal. App. at 217[14]

13  (a limitations period may not be artificially extended by having one disability "tacked" onto

14  another).  If one's exhaustion of prison remedies starts and finishes totally within the two year

15  tolling period, the exhaustion reason for tolling becomes irrelevant.  In another example, if a

16  prisoner's limitations period in an AEDPA context were equitably tolled because of mental

17  _____

18  provision), quoting Rose v. Petaluma & Santa Rosa Ry. Co., 64 Cal. App. 213, 217 (Cal. App.
19  1923) disapproved on other grounds in Harris v. Industrial Acc. Comm. of Cal., 204 Cal.
   432(Cal. 1928)( "it is a settled rule of construction that the exemption period cannot be extended
20  by the connection of one disability with another; in other words, a succession of disabilities
   cannot be tacked upon the first disability so as to prevent the operation of the statute.").

21      [11] April 26, 2007 findings and recommendations adopted by Judge Levi's order, filed on
22  May 21, 2007, in Case No. CIV-S-05-0298 JAM JFM P.

23      [12] August 8, 2008 findings and recommendations adopted by Judge Mendez in an order,
   filed on October 2, 2008 in Case No. CIV-S-05-0298 JAM JFM P.

24      [13] These February 14, 2008, findings and recommendations were adopted by Judge
25  Karlton in an order, filed on Match 25, 2008, in Case No. CIV-S-06-2684 LKK EFB P, and the
   action was dismissed as untimely.

26      [14] See footnote 10.

1  illness for two years, the fact that the law library was unavailable for four months within that

2  period would be irrelevant to the tolling computation.

3          The undersigned is aware that Burns v. DeCarr, 2010 WL 744395 (S.D. Cal.

4  2010) came to the opposite conclusion with respect to a prisoner's PLRA lawsuit.  However,

5  with due respect, the undersigned is unpersuaded by the reasoning of that case.  Burns cites to a

6  California case for the unremarkable proposition that when one is seeking an alternative remedy,

7  the statute of limitations on the claim at issue is tolled during the pendency of seeking the

8  alternative remedy, and that the tolling period is "tacked onto" the end of the normal limitations

9  period.  That is true, but the case, speaking generally to describe tolling, was discussing a

10  *singular* tolling event, not the situation here which is concerned with the situation presented by

11  multiple reasons for tolling occurring contemporaneously.  Burns conclusion that there can be, in

12  effect, a "tolling of the tolling" occasioned by multiple tolling reasons is not supportable by a

13  reading of the California case.

14          Therefore, liberally construing plaintiff's claim in the first amended complaint as

15  having accrued at the end of 2004 (December 31, 2004) and applying the two-year statute of

16  limitations followed by the two-year tolling period (noting that plaintiff claims administrative

17  exhaustion by March 20, 2006), the claim against defendant Roman should have been filed by no

18  later than December 31, 2008.  As noted, this case was filed on June 19, 2009, rendering

19  plaintiff's claim against defendant Roman untimely by 170 days or by some five and a half

20  months.  The motion to dismiss defendant Roman as a defendant because plaintiff's claim

21  against him is time-barred should be granted with prejudice and this defendant dismissed from

22  this action.

23  Plaintiff's Request for Service of Subpoenas/ Requests for Extending Discovery Deadline

24          Plaintiff submits a subpoena he asks to be served upon the non-party Corcoran

25  Prison litigation coordinator seeking production of a number of documents from his own prison

26  file.  See Docket # 99.  Attached to the subpoena is plaintiff's specific request for documents,

1  originals and copies of classification chronos, a photograph, confidential memoranda and

2  administrative appeals, evidently contained in plaintiff's prison file.

3          [T]he court's authorization of a subpoena duces tecum requested
        by an in forma pauperis plaintiff is subject to limitations.  Because
4        personal service of a subpoena duces tecum is required, Federal
        Rule of Civil Procedure 45(b), "[d]irecting the Marshal's Office to
5        expend its resources personally serving a subpoena is not taken
        lightly by the court," *Austin v. Winett*, 2008 WL 5213414, *1
6        (E.D.Cal.2008); 28 U.S.C. § 1915(d).  Limitations include the
        relevance of the information sought as well as the burden and
7        expense to the non-party in providing the requested information.
        Fed.R.Civ.P. 26, 45.  A motion for issuance of a subpoena duces
8        tecum should be supported by clear identification of the documents
        sought and a showing that the records are obtainable only through
9        the identified third party.  See, e.g., *Davis v. Ramen*, 2010 WL
        1948560, *1 (E.D.Cal.2010); *Williams v. Adams*, 2010 WL
10       148703, *1 (E.D.Cal.2010).  The "Federal Rules of Civil
        Procedure were not intended to burden a non-party with a duty to
11       suffer excessive or unusual expenses in order to comply with a
        subpoena duces tecum." *Badman v. Stark*, 139 F.R.D. 601, 605
12       (M.D.Pa.1991); see also, *United States v. Columbia Broadcasting
        System, Inc.*, 666 F.2d 364 (9th Cir.1982) (court may award costs
13       of compliance with subpoena to non-party).  Non-parties are
        "entitled to have the benefit of this Court's vigilance" in
14       considering these factors. *Badman,* 139 F.R.D. at 605.

15  Alexander v. California Dept. of Corrections, 2010 WL 5114931 * 3 (E.D. Cal. 2010).

16          In a separate filing, plaintiff states that nonparty Corcoran litigation coordinator

17  Mary Kimbrell has failed to provide him with an enlarged copy of a photograph contained in his

18  central file that plaintiff claims does not picture him but was wrongly used to validate him as a

19  gangmember.  See docket # 98.  In all of his requests, it is unclear whether plaintiff has sought

20  access to his central file through the appropriate channels or whether plaintiff has sought

21  production of the documents he seeks, including the photograph, from a party within whose

22  possession, custody or control his central prison file at least arguably resides, for example, from

23  defendant Cate, rather than simply attempting to subpoena documents from a non-party.

24          The current discovery cut-off date is January 13, 2012.  Because two of the

25  defendants have not yet answered in light of their motion to dismiss that has been pending and

26  has been addressed herein, and in light of plaintiff's requests to extend the discovery deadline

1   because, inter alia, of the number of defendants, the court will vacate the current deadlines in the

2   Discovery and Scheduling Order, filed on September 28, 2011.  Plaintiff should have an ample

3   opportunity to seek production of the documents he seeks from a party.  Therefore, due to the

4   burden imposed on a nonparty absent sufficient evidence that plaintiff has no other recourse, the

5   court will deny the request to serve the subpoena upon the Corcoran State Prison litigation

6   coordinator at this time.  The discovery deadline is extended until March 13, 2012.  The

7   dispositive motion deadline is extended until July 17, 2012.

8         Plaintiff also asks the court clerk to send him three blank signed subpoenas.

9   The court will direct the court clerk to provide plaintiff with three signed subpoena forms.

10  Plaintiff's Motions for Appointment of Counsel/Request for Termination of Prison Employees

11        Plaintiff has made various and repeated requests for the appointment of counsel.

12  The United States Supreme Court has ruled that district courts lack authority to require counsel

13  to represent indigent prisoners in § 1983 cases.  Mallard v. United States Dist. Court, 490 U.S.

14  296, 298 (1989).  In certain exceptional circumstances, the court may request the voluntary

15  assistance of counsel pursuant to 28 U.S.C. § 1915(e)(1).  Terrell v. Brewer, 935 F.2d 1015, 1017

16  (9th Cir. 1991); Wood v. Housewright, 900 F.2d 1332, 1335-36 (9th Cir. 1990).  In the present

17  case, the court does not find the required exceptional circumstances.  Plaintiff in opposing a

18  number of motions to dismiss has exhibited enough knowledge of his case and the relevant law

19  such that counsel is not warranted.  Moreover, plaintiff, has been unstinting in filing numerous

20  motions and requests to bring the court's attention to his many grievances.  Plaintiff's requests

21  for the appointment of counsel will therefore be denied.

22        Within his requests for appointment of counsel, plaintiff includes complaints of

23  having been obstructed in his efforts to gain access to his legal property, to be provided legal

24  materials and supplies and to obtain copies of his discovery requests from the law library,

25  appearing to name only nonparties as responsible.  See docket # 101, # 107 and # 110.  He asks

26  that defendant Cate be directed to provide him access to his legal property five days a week at his

1  request.  Docket # 107.  Plaintiff also asks the court to order defendant Cate to fire several CSP-

2  Corcoran nonparty employees, specifically, R. Mosier, J. Guzman and J. Gomez,[15] for having

3  denied him copying services and/or adequate access to his legal property in violation of state

4  prison regulations.  Docket # 111 and # 112.  Plaintiff's latest filing indicates that his discovery

5  responses to defendants and a motion to compel which he handed over to be sent to the law

6  library to be copied had not yet been returned to him and the five working days within which he

7  alleges this was to have occurred have been exceeded and he asks that defendants be deemed to

8  have waived their right to discovery responses.  Docket # 118.

9           In opposition, defendants contend that plaintiff's requests should be denied

10 because the court does not have jurisdiction to order much of the relief plaintiff requests, because

11 granting the requests would permit plaintiff to circumvent the requirements of the PLRA[16] to first

12 exhaust his administrative remedies and because the evidence demonstrates plaintiff has been

13 fully capable of prosecuting his case.  Docket # 119.  On the question of jurisdiction, of course,

14 defendants are informed that this court may invoke the All Writs Act with respect to non-parties

15 if necessary.[17]  Defendants take issue with plaintiff's request that the court order the firing of

16 certain nonparty employees and this request is well-taken and will be denied as outside this

17 court's jurisdiction.  Defendants contend that if plaintiff seeks to pursue action against nonparties

18 for obstructing his access to the courts, he should proceed in a separate action against them after

19

20       [15] It is unclear whether Gomez is a defendant.  Plaintiff has named an A.B. Gomez as a
    defendant but identifies this individual as J. Gomez or, possibly, G. Gomez.  See docket # 111, p.
21  1 & fn. 3.

22       [16] Prison Litigation Reform Act.

23       [17] The All Writs Act, 28 U.S.C. § 1651(a), permits the court to issue writs "necessary or
    appropriate in aid of their jurisdictions and agreeable to the usages and principles of law."  See
24  generally S.E.C. v. G.C. George Securities, Inc., 637 F.2d 685 (9th Cir. 1981); United States v.
    New York Telephone Co., 434 U.S. 159 (1977).  This section does not grant the court plenary
25  power to act in any way it wishes; rather, the All Writs Act is meant to aid the court in the
    exercise and preservation of its jurisdiction.  Plum Creek Lumber Company v. Hutton, 608 F.2d
26  1283, 1289 (9th Cir. 1979).

1  exhausting his administrative remedies.  Defendants also maintain that plaintiff has been as

2  prolific in propounding discovery requests upon them as in his filings in this action, averring that

3  on October 17, 2011, defendants received four separate sets of requests for production totaling 12

4  pages and two separate sets of requests for admissions totaling 51 pages in length.  Thereafter,

5  according to defendants, on October 19, 2011, defendants received five sets of requests for

6  admissions totaling 118 pages; on October 24, 2011, defendants received six more sets of

7  requests for production of documents, totaling 14 pages, nine sets of interrogatories totaling 342

8  pages, and five more sets of requests for admissions totaling 282 pages in length.  On October

9  31, 2011, defendants received six additional sets of requests for production 16 pages long,

10 another set of interrogatories 38 pages in length, and three more sets of requests for admissions in

11 the amount of 186 pages.  Docket # 119, citing Declaration of Matthew Ross Wilson, one of

12 defendants' attorneys ¶¶ 3 through 12.  Although defendants indicate that they have filed a

13 declaration by Kimbrel in support of their opposition to plaintiff's myriad requests, there is no

14 such affidavit included in the opposition.  However, defendants do correctly note that plaintiff

15 has over the past several months been able to serve upon them documents totaling in excess of

16 one thousand pages, which increases exponentially when considering the number of pages filed

17 in this court.  On the face of it, plaintiff, therefore, does not make a well-supported argument that

18 he has been unfairly denied access to copying services.  On the other hand, on this showing it is

19 not clear that plaintiff has had his responses to defendants' discovery requests copied and

20 returned to him and the court will require defendant Cate to ascertain to the court within fourteen

21 days that this has been done.  The court will otherwise deny plaintiff's requests at this time.

22  Restriction on Motion-Filing by Plaintiff

23          Plaintiff's excessive motion and request filings unfairly overburden a court that is

24 nationally recognized as extraordinarily burdened by case filings.  Plaintiff filed well over a

25 dozen motions/requests within a three-month period, approaching an abuse of process.  The

26 undersigned will now impose a limit upon the number of requests or motions that he may have

pending until the court is able to address them.  Plaintiff may not have more than one motion or request pending before the court, absent an emergency.  Any emergency request must constitute a genuine urgent need and must be brought in good faith and be well-supported by affidavit and supporting exhibits.

Accordingly, IT IS HEREBY ORDERED that:

1.  Plaintiff's motion to strike new matter raised in defendants Roman's and Kissel's reply, filed on September 1, 2011 (docket # 90), is denied.

2.  Plaintiff's requests to extend the discovery deadline, filed on October 11, 2011 (docket # 97), and on October 31, 2011 (docket # 107) are granted, the deadlines in the September 28, 2011 (docket # 96), Discovery and Scheduling Order are VACATED; the discovery deadline is extended until March 13, 2012, and the dispositive motion deadline is extended until July 17, 2012.

3.  Plaintiff's October 17, 2011 (docket # 99), motion to serve a non-party subpoena is denied without prejudice to plaintiff's providing the requisite fee; plaintiff's request for three signed blank subpoena forms, filed on October 17, 2011, is granted and the Clerk of the Court is directed to include the forms for plaintiff with this order.

4.  Plaintiff's motions for appointment of counsel, filed on October 17, 2011 (docket # 98), October 18, 2011 (docket # 101), October 31, 2011 (docket # 107), November 9, 2011 (docket # 110), November 16, 2011(docket # 112), and on December 19, 2011 (docket # 118), are denied; also denied are his requests regarding access to the law library and legal material, his legal property and for copies; however, defendant Cate must ascertain within fourteen days that plaintiff's responses to defendants' discovery requests and his motion to compel have been copied and returned to him.

5.  Plaintiff's motion for the court to order defendant Cate to terminate certain CSP-Corcoran employees, filed on November 14, 2011 (docket # 111), is denied.

\\\\\

1    6.  Plaintiff's "objections and formal complaint," filed on December 1, 2011

2  (docket # 114), seeking expedited rulings on what the court finds to be excessive motion filing is

3  denied as moot.

4    7.  Plaintiff's "notice of theft" of his legal documents by defendants, filed on

5  December 19, 2011 (docket # 118), asking for defendants to be deemed to have waived their

6  right to receive discovery responses is denied.

7    8.  Plaintiff is hereby limited to the filing of one motion or request until the court

8  reaches a ruling absent an emergency as set forth above.

9    IT IS RECOMMENDED that:

10    1.  The motion to dismiss filed by defendants Roman and Kissel, on July 25,

11  2011, be granted and;

12    a) plaintiff's claim against defendant Roman be dismissed as barred by the statute

13  of limitations and defendant Roman be dismissed with prejudice from this action;

14    b) claims two, three, six and seven be dismissed as to defendant Kissel.

15    2.  With respect to claims two and six, three and seven, these claims be dismissed

16  with prejudice as to all defendants.

17    3.  This matter proceed as to the remaining fourteen defendants on claims one,

18  four and five only.

19    These findings and recommendations are submitted to the United States District

20  Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within fourteen

21  days after being served with these findings and recommendations, any party may file written

22  objections with the court and serve a copy on all parties.  Such a document should be captioned

23  "Objections to Magistrate Judge's Findings and Recommendations."  Any reply to the objections

24  shall be served and filed within fourteen days after service of the objections.  The parties are

25  \\\\\

26  \\\\\

1   advised that failure to file objections within the specified time may waive the right to appeal the

2   District Court's order.  Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

3   DATED: January 9, 2010

4                                                     /s/ Gregory G. Hollows
                                            UNITED STATES MAGISTRATE JUDGE
5

6   GGH:009
    lope1760.ofr
7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26